# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 7611 | DATE | 2/4/2004 |
| CASE TITLE | IP Innovation et al vs. Lexmark Intl, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 2/9/2004 at 9:30 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** Lexmark's motion (Doc 80-1) for summary judgment is denied. Ruling set for February 9, 2004 is stricken. Status hearing set for February 9, 2004 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 3 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | FEB 0 5 2004 | |
| | Notified counsel by telephone. | | date docketed | 92 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | 04 FEB -4 PM 4:54 | 2/4/2004 date mailed notice | |
| | SCT courtroom deputy's initials | Date/time received in central Clerk's Office | SCT mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IP INNOVATION L.L.C. and TECHNOLOGY )
LICENSING CORPORATION, )
)
Plaintiffs, )
)
vs. ) 02 C 7611
)
LEXMARK INTERNATIONAL, INC., )
)
Defendant. )

DOCKETED
FEB 0 5 2004

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on the motion of Defendant Lexmark International, Inc. ("Lexmark") for summary judgment. For the reasons set forth below, the motion is denied.

## BACKGROUND

In May 1989, J. Carl Cooper submitted a patent application (serial number 07/355,461, hereinafter "the '461 application") for an invention to the Patent and Trademark Office ("PTO").[1] The invention involved an apparatus and method for

---

[1] Because the parties did not uniformly conform to the requirements of Local Rule 56.1, portions of their respective statements of fact and responses are unacceptable and are not reflected within the background facts recited here.

improving the visual quality of output on computer "display devices." The application did not specifically enumerate printers as "display devices." In March 1990, Cooper filed an amendment to the application to insert language pertaining to the use of the invention in printers. The PTO examiner, Tommy Chin, objected to the amendment on the grounds that it involved new matter, i.e., matter not previous included either explicitly or inherently in the language of the unamended application.[2] Cooper filed a detailed response to Chin's objections.

Chin objected to the inclusion of the language pertaining to printers twice more. Cooper replied to the third objection in late June 1993. Chin's response took the form of an advisory action, which indicated that the amendment would be entered but that claims 1–26 and claim 30 of the application were rejected. In July, Cooper petitioned the Commissioner of the PTO regarding Chin's position. Ultimately, the Commissioner ruled that Chin's new matter objections were moot, because the objectionable material had either been cancelled or deleted from the application.

The following September, Cooper filed an application (serial number 08/119,610, hereinafter "the '610 application") that on its face purported to be a continuation of the '461 application. Cooper also stated that he wished for the PTO to

---

[2] Chin took issue with portions of the patent other than the new matter, but the specifics of the other objections are neither discussed by the parties nor pertinent to our decision on the instant motion.

"[e]nter the unentered amendment previously filed on 6/24/93." A new examiner was assigned to the file, and ultimately the patent issued with the printer-specific language included (U.S. Patent No. 5,424,780, hereinafter "the '780 patent").[3]

In September 1991, Lexmark began selling printers containing print enhancement technology. The current owners of the patent (IP Innovation LLC and Technology Licensing Corporation, collectively referred to herein as "IP") filed suit, alleging that this technology infringed the '780 patent. Lexmark contends that the effective filing date for the patent is September 13, 1993, the filing date of the '610 application. Thus, they argue, their printers were on sale more than one year prior to the date of the application, rendering the '780 patent invalid under 35 U.S.C. § 102(b). The instant motion seeks summary judgment to that effect.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

---

[3] Lexmark's statement of facts also describes events that took place during a reexamination of the '780 patent. However, the party seeking the reexamination expressly assumed for purposes of those proceedings that a printer was a "display device" within the scope of the patent's language. Thus, one of the central questions presented by this motion was removed from consideration at the inception of the reexamination and the proceedings thus provide little guidance for our analysis.

Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986). The burden then shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues on which the nonmovant bears the burden of proof at trial. Id. The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence. Id. The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. Bay v. Cassens Transport Co., 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Insolia v. Philip Morris, Inc., 216 F.3d 596, 599 (7th Cir. 2000); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). With these principles in mind, we turn the motion before us.

## DISCUSSION

The ultimate question posed by this motion is simple to state: Is the effective filing date of the '780 patent that of the '461 application (May 1989) or that of the '610 application (September 1993)? Reaching an answer is anything but simple with the materials the parties have supplied. The most serious impediment to resolution of the

motion is Lexmark's failure to present its facts in a manner consistent with Local Rule 56.1. In short, the holes in the story left after elimination of noncomplying portions of the statement of facts make it impossible for this court to reach any definitive conclusion that Lexmark has shown entitlement to judgment as a matter of law.

For its part, IP has not made a substantial contribution to fleshing out the case, by advancing general, unsupported denials and legal argument that have no place in a 56.1 statement of facts. Naturally, as the nonmoving party, IP carries a much lesser burden than Lexmark to recount what transpired, but if Lexmark had filed a proper statement of facts, IP would be facing a defeat purely by operation of the rule. See, e.g., Leibforth v. Belvidere Nat'l Bank, 337 F.3d 931, 934 (7th Cir. 2003); Smith v. Lamz, 321 F.3d 680, 683 (7th Cir. 2003); Bordelon v. Chicago Sch. Reform Bd. of Trustees, 233 F.3d 524, 528-29 (7th Cir. 2000).

Even if the supporting materials were in order, the motion as presented would not be amenable to resolution at this stage. Interestingly, Lexmark does not argue that the '610 application was a continuation-in-part of the '461 application. "A continuation-in-part is an application filed during the lifetime of an earlier nonprovisional application, repeating some substantial portion or all of the earlier nonprovisional application and adding matter not disclosed in the said earlier nonprovisional application." Manual of Patent Examining Procedure, § 201.08. A

patent issuing from a continuation-in-part will have multiple filing dates, each corresponding to the first appearance of the information in question. See Litton Sys. Inc. v. Whirlpool Corp., 728 F.2d 1423 (Fed. Cir. 1984).

Lexmark argues that the '610 application included new matter not contained in the '461 application, but they do not take this assertion to its logical next step: the '610 application is a continuation-in-part. Instead, Lexmark argues that IP should be estopped from using the earlier date, which presupposes that the '610 application was a continuation. "A continuation is a second application for the same invention claimed in a prior nonprovisional application and filed before the original prior application becomes abandoned or patented." Manual of Patent Examining Procedure, § 201.07. Though a patent issued under a continuation process may result from many successive applications, the patent is deemed to have only one effective filing date: that of the earliest application. See Netscape Communications Corp. v. Konrad, 295 F.3d 1315, 1319 (Fed. Cir. 2002). In support of its estoppel argument, Lexmark offers two theories: 1) Cooper acquiesced to Examiner Chin's conclusions by not appealing his decision to the PTO Board of Appeals, or 2) Cooper obtained inclusion of the disputed language in the '780 patent through inequitable conduct, namely concealing the prior proceedings with Examiner Chin from the new examiner.

Lexmark's theory of acquiescence fails for two reasons. First, the main source of legal support it offers for this theory, the Litton case, is factually distinguishable. Litton involved an applicant who implicitly admitted the correctness of an examiner's characterization of added language as "new matter" by filing a continuation-in-part application. There is no allegation here that Cooper filed the '610 application as a continuation-in-part. Indeed, if that were the case, there would be no need to assert estoppel. New matter contained only in the second application would not be entitled to the earlier filing date by virtue of the nature of the procedural mechanism. Second, the record contains evidence that Cooper contested the decisions of Examiner Chin at each stage of the proceedings. Although he did not file an appeal, a reasonable factfinder could conclude from the record that this was because the new examiner allowed the language to be added, leaving nothing for him to appeal. Thus we cannot say as a matter of law that Cooper acquiesced to Chin's characterization of the amendment as new matter. See 3M Innovative Properties Co. v. Avery Dennison Corp., 350 F.3d 1365, 1373-74 (Fed. Cir. 2003).

This brings us to the second of Lexmark's theories, which basically states that even if Cooper did not acquiesce to the correctness of Examiner Chin's decision, he obtained inclusion of the printer-specific language by deliberately concealing the prior proceedings from the new examiner. However, as stated earlier, the '610 application

was a continuation application, meaning that the examiner would have access to the communications between Chin and Cooper regardless of whether Cooper specifically raised the issue. This is in sharp contrast to the situation in Li Second Family Limited Partnership v. Toshiba Corp., a case cited by Lexmark as controlling the outcome in this case. 231 F.3d 1373 (Fed. Cir. 2000). In Li, the patentee had two applications pending simultaneously before different examiners. Id. at 1376. Li claimed that one of the applications was entitled to an earlier filing date, a contention rejected by both the examiner and the Board of Appeals. Id. at 1377. When the same issue arose later in the prosecution of the second application, Li did not inform the second examiner that it had already been decided against him, and a patent issued on the second application. Id. The district court held that this failure to disclose the earlier adverse ruling was inequitable conduct and Li could not benefit from his deceptive nondisclosure. Id. at 1377-78. Nothing as egregious as the circumstances in Li has been advanced in this case. The sole evidence upon which Lexmark relies in support of its argument that September 1993 is the filing date is the prosecution history of the '780 patent, and it asserts that we must look no further. It is certainly true that an applicant may not contradict the contents of a patent's file, but the prosecution history in this case does not explain why the advisory action indicated that the amendment would be entered if it still contained objectionable material. Nor does it shed any light on the reason why

-8-

or how the objectionable material showed up in the issued patent if it had been cancelled or deleted, as the Commissioner stated. Nor does it give any indication why the new examiners did not echo or even address the previous examiner's objections even though that information was contained in the file they examined. Lexmark implicitly acknowledges these informational gaps by alleging that they were the result of Cooper manipulating the PTO by deliberately failing to alert the new examiner to the prior objections. They point out that the record does not contain an official withdrawal of the previous rejection, as required by PTO procedure, and conclude that this must mean that Cooper slipped his additions in under the radar. While we agree with Lexmark that this deficiency is troublesome, we do not agree that the only possible explanation can be deliberate wrongdoing by Cooper. It is conceivable on the present record that the lack of withdrawal was an internal oversight rather than a purposeful attempt by Cooper to deceive the PTO.

Naturally, IP denies any misdoing by Cooper, pointing to several instances in the record where he brought the prior rejections to the new examiner's attention.[4] IP offers its own explanation: to one skilled in the art, the disclosure in the original

---

[4] IP's response to ¶ 16 of Lexmark's statement of facts is one of the few places where IP follows the procedures set forth in the rule for disputing a fact, by stating a concise response to the movant's statement that includes specific references to the supporting material. See Local Rule 56.1(b)(3).

application described a use of the invention in laser printers. This explanation is supported by the characterization of the application as a continuation as well as the eventual inclusion of the printer-specific language in the issued patent. In short, the history of this application cannot be properly understood without explanations not found within its contents, and a reasonable factfinder is left with more than one plausible scenario, rendering summary judgment unavailable. We cannot, on the present record, determine what filing date applies in this case. Consequently, we cannot determine whether the patent is rendered invalid by the on-sale bar of 35 U.S.C. § 102(b). Lexmark's motion for summary judgment must be denied.

## CONCLUSION

Based on the foregoing analysis, Lexmark's motion for summary judgment is denied.

_____
Charles P. Kocoras
Chief Judge
United States District Court

Dated: FEB - 4 2004